# EXHIBIT A

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

Shirley M. Travers
4720 B Street, SE
Washington, DC 20019                    *Plaintiff*

vs.                                                           Civil Action No. _0000160-09_

WELLS FARGO BANK, N.A.
2701 Wells Fargo Way
Minneapolis, MN 55468          *Defendant*

Serve: Wells Fargo Bank, NA
       c/o Corporation Service Company
1090 Vermont Ave NW                    **RE-ISSUE**
Washington, DC 20005                   **SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Amy Mix   483483
Name of Plaintiff's Attorney

601 E Street, NW
Address
Washington, DC 20049

202 434-2171
Telephone

*Clerk of the Court*

By_____
                    Deputy Clerk

Date_____

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 03

IMPORTANT:  IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT.  IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT.  IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (624-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.



**CORPORATION SERVICE COMPANY'**

## Notice of Service of Process

CZG / ALL
Transmittal Number: 6649413
Date Processed: 05/18/2009

| | |
|---|---|
| **Primary Contact:** | Diana Benda<br>Wells Fargo Financial, Inc.<br>800 Walnut Street<br>Des Moines, IA 50309 |

| | |
|---|---|
| **Entity:** | Wells Fargo Bank, N.A.<br>Entity ID Number  1928222 |
| **Entity Served:** | Wells Fargo Bank, NA |
| **Title of Action:** | Shirley M. Travers vs. Wells Fargo Bank, NA |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court:** | Superior Court, District Of Columbia |
| **Case Number:** | 0000160-09 |
| **Jurisdiction Served:** | District Of Columbia |
| **Date Served on CSC:** | 05/18/2009 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney:** | Amy R. Mix<br>202-434-2171 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882  |  sop@cscinfo.com

# IN THE SUPERIOR COURT
## OF THE DISTRICT OF COLUMBIA

SHIRLEY M. TRAVERS,                          )
4720 B Street S.E.                           )
Washington, DC 20019                         )          0000160-09
           Plaintiff,      )
              )          Civil Action No.
      v.                            )
              )
WELLS FARGO BANK, NA                         )
2701 Wells Fargo Way                         )
Minneapolis, MN, 55467,                      )
              )
     Serve:  Mayor's Office              )
           DCRA, Corporation Division   )
           941 North Capitol St. NE     )
           Washington, DC 20002         )
              )
WORLD SAVINGS BANK, FSB                      )
1901 Harrison Street                         )
Oakland, CA 94612,                           )
              )
     Serve:  Mayor's Office              )
           DCRA, Corporation Division   )
           941 North Capitol St. NE     )
           Washington, DC 20002         )
              )
WACHOVIA MORTGAGE, FSB                       )
FKA WORLD SAVINGS BANK, FSB                  )
P.O. Box 659558                              )
San Antonio, TX 78265-9558                   )
              )
     Serve:  Mayor's Office              )
           DCRA, Corporation Division   )
           941 North Capitol St. NE     )
           Washington, DC 20002         )
               )
EQUITABLE MORTGAGE GROUP, INC.               )          JURY TRIAL DEMANDED
7305 Baltimore Avenue, Suite 207             )
College Park, MD 20740,                      )
              )
     Serve:     ROBERT ENZEL             )
           1502 27th Street, N.W.       )
           Washington, DC 20007         )
               )

RECEIVED
Civil Clerk's Office
JAN 1 2 2009

DARREN SOODAK                          )
7305 Baltimore Avenue, Suite 207       )
College Park, MD 20740,                )
                                       )
        Serve:      Same               )
                                       )
CHASE TITLE INC                        )
300 Redland Court, Suite 205           )
Owings Mills, MD  21117,               )
                                       )
        Serve:  Mayor's Office         )
                DCRA, Corporation Division )
                941 North Capitol St. NE )
                Washington, DC  20002   )
                                       )
MILLENNIUM TITLE &                     )
ABSTRACT COMPANY, INC.                 )
2905 Mitchellville Road, Ste 209       )
Bowie, MD  20716,                      )
                                       )
        Serve: DORSEY EVANS            )
                2840 Davenport ST., N.W. )
                Washington, DC 20008    )
and                                    )
                                       )
UNKNOWN DEFENDANT ASSIGNEES,           )
                                       )
        Defendants.                    )
                                       )

## VERIFIED COMPLAINT

### Action Involving Real Property

### (4720 B Street, SE, Washington, D.C. 20019, Lot s5349, Square 0031)

1.      Plaintiff, Shirley M. Travers, brings this action to seek redress against abusive

mortgage refinancing practices that have jeopardized her home.  Collectively, Defendants

targeted Ms. Travers, took advantage of her lack of sophistication in financial matters, and

2

induced her to enter into unsuitable loans that did not substantially benefit her in violation of federal and District of Columbia laws.

2.    Defendant Equitable Mortgage Group, Inc. ("Equitable") solicited Ms. Travers and induced her to refinance her home three times in less than twenty seven months. Collectively, these refinances, with their attendant fees, costs, prepayment penalties, and negative amortization increased the mortgage debt on Ms. Travers's home.

3.    Ms. Travers, a 76-year-old African-American woman, was repeatedly promised low payments and either a fixed-rate or reverse mortgage on her home in Southeast Washington. After being provided with a mortgage, she was then repeatedly advised that her rate was going to adjust upward, which would necessitate a new mortgage.

4.    Instead of the promised fixed-rate loans or reverse mortgage, Ms. Travers was sold a series of increasingly complex and risky mortgage products, including a refinance from a fixed-rate mortgage to a payment option adjustable rate mortgage. These loans were ill-suited to a person of her financial means and did not provide her a substantial benefit. The payment option adjustable rate mortgage jeopardized her home ownership by increasing the balance on her mortgage every day.

5.    Ms. Travers's District of Columbia claims arise in part under the District of Columbia Consumer Protection Procedures Act ("CPPA") D.C. Code § 28-3901 *et seq.* which protects consumers against unfair and deceptive trade practices. Among other things, the CPPA prohibits mortgage lenders from making loans if there is a reasonable probability a consumer cannot repay and from making loans from which the consumer does not receive a substantial benefit.

6.      Ms. Travers's District of Columbia claims also arise in part under the District of Columbia Mortgage Lender and Broker Act ("MLBA"), D.C. Code § 26-1101 *et seq.* which provides for the licensing and regulation of mortgage lenders and mortgage brokers. Among other things, the MLBA regulates loan disclosures and execution of agreements.

7.      Ms. Travers also asserts claims against defendants Wells Fargo Bank, NA ("Wells Fargo") and World Savings Bank, FSB ("World Savings") and any other defendant assignee of the Wells Fargo and World Savings mortgages based on violations of the federal Truth in Lending Act, 15 U.S.C. §1601, *et seq.* ("TILA") and a corollary D.C. statute, D.C. Code § 28-3301 *et seq.*

## JURISDICTION

8.    Jurisdiction of this Court is founded upon §§ 11-921, 28-3905(k), 28-3314, and 13-423 of the D.C. Code.

## PARTIES

9.      Plaintiff Shirley M. Travers resides at 4720 B Street, SE, Washington, D.C. 20019 ("the property").

10.      Defendant Wells Fargo is a federally chartered savings bank. Upon information and belief Wells Fargo is located at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104. Upon information and belief, Defendant Wells Fargo is a licensed mortgage lender in the District of Columbia that regularly originates and purchases loans secured by homes in the District of Columbia.

4

11.    Upon information and belief, Defendant World Savings was a federally chartered savings bank. Upon information and belief, Wachovia Mortgage, FSB acquired World Savings. Upon information and belief, Defendant World Savings regularly did mortgage lending in the District of Columbia and took security interests in District of Columbia properties.

12.    Upon information and belief, Wachovia Corporation is now part of Wells Fargo & Company. Upon information and belief, Wachovia is now affiliated with Wells Fargo.

13.    Defendant Equitable Mortgage Group, Inc. ("Equitable") is a Maryland corporation whose place of business is 7305 Baltimore Avenue, Suite 207, College Park, Maryland 20740.. Equitable is licensed as a mortgage broker in the District of Columbia.

14.    Defendant Darren Soodak is president of defendant Equitable. His business address, on information and belief, is 7305 Baltimore Avenue, Suite 207, College Park, Maryland. Mr. Soodak regularly solicits and brokers mortgage loans to D.C. homeowners.

15.    Defendant Millennium Title & Abstract Company, Inc. ("Millennium Title") is a corporation organized and existing under the laws of Maryland with its principal place of business at 2905 Mitchellville Road, Ste. 209, Bowie, MD 20716.

16.    Defendant Millennium Title regularly conducts closings for properties in the District of Columbia, including creating and executing documents affecting title to real property in the District of Columbia. Millennium Title and prepared and executed documents affecting title to the real property at issue in this action.

5

17.     Upon information and belief, Defendant Millennium Title does not maintain a registered agent in the District of Columbia, and is not licensed to conduct business in the District of Columbia.

18.     Upon information and belief, Defendant Chase Title Inc ("Chase Title") is unincorporated and has its principal place of business at 300 Redland Court, Suite 205, Owings Mills, MD 21117.

19.     Defendant Chase Title regularly conducts closings for properties in the District of Columbia, including creating and executing documents affecting title to real property in the District of Columbia. Chase Title prepared and executed documents affecting title to the property at issue in this action.

20.     Upon information and belief, Defendant Chase Title does not maintain a registered agent in the District of Columbia, and is not licensed to conduct business in the District of Columbia.

21.     The identities of the assignees of Ms. Travers's mortgages are unknown at this time. On information and belief, Ms. Travers's mortgages were securitized and assigned to currently unknown trusts and purchased by unknown investors. These entities are collectively referred to as the "Defendant Assignees".

## FACTS

22.     Shirley M. Travers is a 76-year old African-American woman who has owned her home at 4720 B Street SE Washington since 1996.

23.     Ms. Travers suffered a stroke, has a serious heart condition, and undergoes dialysis three times a week. Ms. Travers began dialysis in June 2005.

24.    Ms. Travers completed the 10th grade and then went to work to help support her family. Her various jobs included working in a hospital, at a senior facility and as a bus attendant. She last worked approximately 15 years ago.

25.    Ms. Travers was widowed in 1977.

26.    Currently, Ms. Travers receives Social Security and a pension totaling less than $1,400 a month.

27.    On April 8, 1996, Ms. Travers obtained title to her 2 bedroom, 1 bath home in Southeast Washington through a Quitclaim deed from her aunt. There was no mortgage on the home when she obtained it.

28.    Ms. Travers obtained her first mortgage on the property in 1997. The mortgage was a fixed-rate.

29.    For approximately ten years, Ms. Travers was repeatedly solicited with telephone calls and mailings to refinance the existing mortgages on her home. The representations and promises made in these solicitations were particularly attractive to Ms. Travers because of her desire to have a mortgage that would be affordable on her limited pension and Social Security retirement income.

30.    Each of Ms. Travers's three most recent refinancings was the result of repeated telephone solicitations from Equitable. Equitable initiated all the refinances which occurred between January 2006 and March 2008. Equitable president, Defendant Mr. Soodak and Equitable loan officer Ms. Christina Roberson called Ms. Travers repeatedly over this time period, each time telling her they could help her obtain a lower payment and a fixed-rate mortgage or a reverse mortgage.

31.     Ms. Travers told the Equitable representatives that she underwent dialysis three times a week. Equitable picked up Ms. Travers from her home and drove her to the closings.

### *January 2006 Refinance:  Wells Fargo Mortgage*

32.     In the winter of 2005-2006, Ms. Travers had a mortgage on her home of approximately $116,000. She was solicited by Equitable over the telephone for a refinance of her mortgage. Equitable's president, Mr. Soodak, told Ms. Travers that it was time to look into a new mortgage and that her monthly payment would be less. In fact, Ms. Travers's existing loan was a fixed-rate and executed in August 2004. Equitable did not warn her about a prepayment penalty for paying off the prior loan.

33.     Ms. Travers provided Equitable with documentation of her income, assets and bank accounts.

34.     An unidentified Equitable employee allegedly conducted an interview and finalized a Loan Application. The Loan Application was dated January 13, 2006, the same day as the closing.

35.     Equitable did not provide Ms. Travers with any paperwork to review or sign prior to the closing.

36.     Ms. Roberson picked up Ms. Travers and drove her to the closing in Maryland. There, Ms. Travers closed this new loan on January 13, 2006. The originating lender on the loan was Wells Fargo.

37.     Ms. Travers obtained a fixed-rate mortgage, but not on the terms Equitable promised.   Instead, her monthly payments increased by over $130 per month.

38.    The Wells Fargo loan imposed a prepayment penalty if Ms. Travers paid off the mortgage less than three years after its origination.

39.    The principal amount of the new loan jumped from $116,000.00 to $144,000.00. Ms. Travers paid $8,357.74 in fees and costs to settle the loan as well an as yet undetermined prepayment penalty to repay her previous loan.

40.    Equitable was paid a yield spread premium of $720.00 by Wells Fargo. A "yield spread premium" is a premium the lender pays to the broker, which is paid for by the borrower in the form of a higher interest rate. The "yield spread premium" is typically higher when the broker delivers a loan with a prepayment penalty to the lender.

41.    Ms. Travers's home was appraised by Barry S. Sacks at Appraisers USA. On November 3, 2005, the alleged estimated market value of Ms. Travers's home was $225,000.00. The client listed on the Appraisal Report was Equitable Mortgage Group. The appraisal cost $350.00.

42.    The January 13, 2006 Loan Application erroneously represented information about Ms. Travers including that Ms. Travers (1) received a monthly pension of $2,135.00 when in fact her current 2009 pension amount is less than $630.00 and the amount was less in 2006; (2) had completed 16 years of school when in fact she completed 10 grades; (3) had a savings account numbered 99999 with a purported balance of $4,250.00 when in fact she had no such account or amount in savings; and (4) had been retired for 2 years when in fact she had not worked for at least ten to fifteen years prior to the loan.

43.    Ms. Travers's actual income in January 2006 was insufficient to repay the loan and pay for household expenses.

44.     At the closing, Ms. Travers was given loan documents to sign and initial that had blanks left to be filled in.

45.     The Truth in Lending Act Disclosure Statement dated January 13, 2006 is not in a reasonably understandable form. The 6.875 % "guaranteed" interest rate stated on the face of the TILA disclosure conflicts with the 7.2840 % Annual Percentage Rate.

46.     Ms. Travers did not receive required loan documents, including a Good Faith Estimate.

47.     On January 9, 2009, a rescission notice was faxed and express mailed to Wells Fargo Home Mortgage.

### _October 31, 2006 Refinance: World Saving Bank_

48.     In the fall of 2006—only eight months after her previous refinance—Equitable again solicited Ms. Travers over the telephone for another refinance of her mortgage. Equitable told Ms. Travers that it was time to get the loan straightened out. Again, Equitable promised lower payments and a fixed rate. Equitable did not warn Ms. Travers that she would incur a prepayment penalty for paying off the January 2006 loan so early.

49.     Ms. Travers provided Equitable with documentation of her income, assets and bank accounts.

50.     A Christina "Roberin" allegedly conducted an interview and finalized a Loan Application on behalf of World Savings. The phone number provided for Christina "Roberin" was 301-864-5600. The phone number for the Equitable Mortgage Group was also 301-864-5600. One of the representatives from Equitable that contacted Ms. Travers to solicit the refinancing was Christina Roberson.

10

51.    Equitable did not provide Ms. Travers with any paperwork to review or sign prior to the closing.

52.    Ms. Roberson picked up Ms. Travers and drove her to the closing in Maryland. There, Ms. Travers closed this new loan on October 31, 2006. The originating lender on the loan was World Savings.

53.    Equitable provided Ms. Travers with a payment option Adjustable Rate Mortgage, not the fixed rate mortgage product as promised. Under the terms of the loan, the interest rate charged could change on the first payment date.

54.    The World Savings loan also imposed a prepayment penalty if Ms. Travers paid off the mortgage less than three years after its origination.

55.    The principal amount of the new loan jumped from $144,000.00 to $184,000.00. Ms. Travers paid $8,154.66 in fees and costs to settle the loan as well an as yet undetermined prepayment penalty to repay her previous loan.

56.    Equitable was paid a yield spread premium of $3,680 by World Savings.

57.    Ms. Travers did not receive a copy of an appraisal which allegedly cost $325.00.

58.    The October 31, 2006 Loan Application erroneously represented information about Ms. Travers including that Ms. Travers (1) received a monthly pension and retirement income of $3,440.00 when in fact her current 2009 monthly pension and retirement income amount is less than $1,400.00 and the amount was less in 2006; (2) a net rental income of $583 when in fact Ms. Travers had not had tenants since the late summer of 2006; and (3) had been retired for 3.08 years when in fact she had not worked for at least ten to fifteen years prior to the loan.

11

59.     Ms. Travers's actual income in October 2006 was insufficient to repay the loan and pay for household expenses.

60.     Upon information and belief, World Savings assigned Ms. Travers's mortgage to Wachovia in March 2008.

61.     At the closing, Ms. Travers was given loan documents to sign and initial that had blanks left to be filled in.

62.     Ms. Travers did not receive required loan documents, including a Good Faith Estimate and two Notices of Right to Cancel.

### *March 2008 Refinance: Wells Fargo*

63.     In March of 2008, Ms. Travers was again solicited by Equitable over the telephone for yet another refinance of her mortgage. Equitable told Ms. Travers about a reverse mortgage option. Equitable did not warn her about a prepayment penalty for paying off the October 2006 loan early.

64.     Ms. Travers provided Equitable with documentation of her income, assets and bank accounts.

65.     An unidentified Equitable employee allegedly conducted an interview and finalized a Loan Application. The Loan Application dated March 10, 2008, the same day as the closing, was not signed by Ms. Travers.

66.     Equitable did not provide Ms. Travers with any paperwork to review or sign prior to the closing.

67.      Ms. Roberson picked up Ms. Travers and drove her to the closing in Maryland. There, Ms. Travers closed this new loan on March 10, 2008. The originating lender on the loan was Wells Fargo.

68.      At the closing, neither a reverse mortgage nor a fixed-rate mortgage was presented. Ms. Travers's new loan was an adjustable rate mortgage—not the reverse mortgage she was promised. Under the terms of the loan, Ms. Travers paid interest only for five (5) years.

69.      The Wells Fargo loan also imposed a prepayment penalty if Ms. Travers paid off the mortgage less than three years after its origination.

70.      The principal amount of the new loan jumped from $184,000.00 to $206,000.00. Ms. Travers paid $9,389.25 in fees and costs to settle the loan as well an as yet undetermined prepayment penalty and interest that had accrued on her prior Payment Option ARM mortgage to repay her previous loan.

71.      Equitable was paid a yield spread premium of $706.58 by Wells Fargo.

72.      The March 10, 2008 Loan Application erroneously represented information about Ms. Travers. Some of the misrepresentations were the same misrepresentations as included on the January 13, 2006 loan application including that Ms. Travers had completed 16 years of school when in fact she completed 10 grades and that she had been retired for 2 years when in fact she had not worked for at least ten to fifteen years prior to the loan.

73.      The March 10, 2008 Loan Application also erroneously stated that Ms. Travers received a gross monthly income of $2,952.00 when in fact her current 2009 monthly

13

pension and retirement income amount is less than $1,400.00 and the amount was less in 2008.

74.    Ms. Travers's actual income in March 2008 was insufficient to repay the loan and pay for household expenses.

75.    Ms. Travers's home was appraised by Barry S. Sacks at Appraisers USA. On December 18, 2007, the alleged estimated market value of her home was $270,000.00. The client listed on the Appraisal Report was Equitable Mortgage Group. The appraisal cost $350.00. On the day of the appraisal, Ms. Travers wrote a personal check to Barry Saks for $150.00.

76.    At the closing, Ms. Travers was given loan documents to sign and initial that had blanks left to be filled in.

77.    The Truth in Lending Disclosure Statement dated March 10, 2008 is not in a reasonably understandable form. The 5.250 % "guaranteed" initial interest stated on the face of the TILA disclosure conflicts with the 5.180 % Annual Percentage Rate.

78.    Ms. Travers did not receive required loan documents, including a Good Faith Estimate.

### *Origination and Assignment of Ms. Travers's Mortgages*

79.    On information and belief, Ms. Travers's mortgages were securitized and assigned to currently unknown trusts and purchased by unknown investors ("Defendant Assignees").

80.    On information and belief, the complex, unaffordable, and unconscionable mortgages extended to Ms. Travers were based on mortgage products and documentation and

underwriting guidelines created by Defendants Wells Fargo, World Savings, and their

Defendant Assignee secondary market partners, all of whom promoted, underwrote and

ultimately paid incentives to employees or brokers for each of the loans at issue.

### COUNT I – VIOLATION OF THE D.C. CONSUMER PROTECTION PROCEDURES ACT (CPPA) (AGAINST WELLS FARGO, WORLD SAVINGS, AND DEFENDANT ASSIGNEES)

81.     Plaintiff repeats the allegations of the preceding paragraphs as if fully set

forth herein.

82.     The District of Columbia, in order to protect consumers from unfair and

misleading business practices and to provide consumers with proper redress of grievances,

enacted the Consumer Protection Procedures Act ("CPPA"), D.C. Code §28-3901, *et seq.*

83.     The CPPA applies to consumer credit loans secured by residential

property.

84.     Any consumer who suffers damages as a result of violations of the CPPA

may bring an action and recover treble damages, attorneys' fees, punitive damages and other

appropriate relief.

85.     Defendants Wells Fargo, World Savings, and its Defendant Assignees

made, funded, and securitized an unconscionable loan to Ms. Travers in violation of D.C.

Code 28-3904(r)(1), which prohibits the making loans without regard to a consumer's ability

to repay the loan.  D.C. Code § 28-3904(r).

86.     Defendants Wells Fargo, World Savings and its Defendant Assignees had

knowledge that the Income and Asset sections of Ms. Travers's Residential Loan Application

were inflated.

15

87.     Defendants Wells Fargo, World Savings and its Defendant Assignees'
practice of originating, funding, and securitizing mortgages without consideration of actual
income or ability to repay is an unfair and deceptive practice under the CPPA.

88.     Defendants Wells Fargo and World Savings, acting in concert with
unknown Defendant Assignees, through their actions in promoting, underwriting and
ultimately funding Ms. Travers's loans, violated the CPPA by:

    a.    Paying yield spread premiums and/or other financial incentives to
brokers and lenders to originate loans to borrowers such as Ms. Travers,
with unconscionable prepayment penalties;

    b.    Paying yield spread premiums and/or other financial incentives to
brokers and lenders to originate payment option ARM's that are
underwritten so that borrowers like Ms. Travers will be forced to
refinance or go into default because of the inability to repay;

    c.    Paying yield spread premiums and/or other financial incentives to
brokers and lenders to originate payment option ARM's whose negative
amortization will erode the equity in the homes of borrowers such as
Ms. Travers.

89.     Defendants Wells Fargo and World Savings, acting in concert with
unknown Defendant Assignees, through their actions in promoting, underwriting and
ultimately funding Ms. Travers's loan, violated the CPPA by paying financial incentives to
originate loans to borrowers such as Ms. Travers with unconscionable prepayment penalties.

90.     Defendants Wells Fargo and World Savings, acting in concert with
unknown Defendant Assignees, through their actions in promoting, underwriting and

16

ultimately funding Ms. Travers's loan violated the CPPA by paying financial incentives to

originate loans which Ms. Travers could not pay based on her actual income.

91.    Defendants Wells Fargo, World Savings and its Defendant Assignees'

violations of the CPPA were intentional, willful and wanton and justify the imposition of

treble and punitive damages as well as attorneys' fees and costs.

## COUNT II - VIOLATIONS OF THE CPPA
### (AGAINST EQUITABLE, SOODAK, WELLS FARGO, WORLD SAVINGS, AND DEFENDANT ASSIGNEES)

92.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set

forth herein.

93.    Defendants solicited, brokered and extended complex and unconscionable

loans to Ms. Travers in violation of D.C. Code 28-3904 by, *inter alia*:

a.    Refinancing Ms. Travers's mortgage loans without providing her

substantial benefits. D.C. Code § 28-3904(r)(2). Indeed, each of the

refinancings worked to Ms. Travers substantial detriment—among other

things, causing her to pay some combination of substantial costs and fees,

prepayment penalties, and/or negative amortization;

b.    Extending mortgage loans to Ms. Travers with knowledge that there was

no reasonable expectation she would be able to repay the mortgages as

structured, in violation of D.C. Code §28-3904(r)(1);

c.    Knowingly took advantage of Ms. Travers's inability to protect her own

interests by reason of her age, physical infirmities, lack of sophistication,

and other factors,  in violation of D.C. Code §28-3904(r)(5);

17

    d.    Providing loan documents to Ms. Travers for signature and initials with blanks that were left to be filled in, in violation of D.C. Code §28-3904(r).

94.    Defendants committed unlawful trade practices under D.C. Code § 28-3904 by, *inter alia*:

    a.    Materially misrepresenting the benefits to Ms. Travers of refinancing her home mortgages and the terms of the mortgages in violation of § 28-3904(e);

    b.    Materially misrepresenting that the mortgages would have fixed rates, in violation of § 28-3904 (a) & (e);

    c.    Materially misrepresenting that a mortgage would be a reverse mortgage, in violation of § 28-3904 (a) & (e);

    d.    Failing to state material facts regarding the escalating adjustable rate payments that were imposed under the terms of the Payment Option ARM and interest only ARM mortgages they sold Ms. Travers, in violation of § 28-3904(f);

    e.    Materially misrepresenting to Ms. Travers that the rates on her current mortgages were about to adjust upward when those adjustments were not due to occur for many more months, in violation of § 28-3904(a) & (e);

    f.    Failing to inform Ms. Travers that refinancing the mortgages with prepayment penalties prior to the expiration of the penalty period would impose significant costs, in violation of § 28-3904(f);

g.  Promising Ms. Travers that her monthly payments would go down when, in fact, the monthly payments were scheduled to go to higher and unaffordable levels, in violation of § 28-3904(a) & (e);

h.  Failing to tell Ms. Travers that the payment option ARM product they sold her would add to the principal balance on her mortgage, in violation of § 28-3904(f);

i.  Providing loan documents to Ms. Travers for signature and initials with blanks that were left to be filled in, in violation of D.C. Code §28-3904(f).

j.  Falsely stating to Ms. Travers that mortgage services were required, in violation of § 28-3904(k);

k.  Representing that the mortgages were supplied in accordance with a previous representations when they were not, in violation of § 28-3904(u);

l.  Failing to make required loan disclosures, in violation of § 28-3904(hh);

m.  Failed to provide her with a copy of the Good Faith Estimate, as required by the Real Estate Settlement Procedures Act.

95.  These misrepresentations of material facts or failures to state material facts were made with knowledge that they were false or that their omission would create a false understanding.

96.  Ms. Travers justifiably relied on these misrepresentations and/or failures to state material facts.

97.  Defendants' violations of the CPPA were intentional, willful and wanton and justify the imposition of treble and punitive damages as well as attorneys' fees and costs.

## COUNT III - VIOLATIONS OF THE CPPA
## (AGAINST CHASE TITLE AND MILLENNIUM TITLE)

98.      Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

99.      Defendants Millennium Title and Chase Title purport to have provided services, including settlement services, to Ms. Travers, including by preparing closing documents and by certifying, notarizing and recording the Wells Fargo Deeds of Trusts and the World Savings Deed of Trust.

100.      Defendants performed settlement services regarding Ms. Travers mortgages in violation of D.C. Code 28-3904 by, *inter alia*:

   a.      Materially misrepresenting that the documents prepared and presented by the Defendant Title companies were in compliance with District of Columbia laws and business customs, in violation of § 28-3904(e);

   b.      Providing loan documents to Ms. Travers for signature and initials with blanks that were left to be filled in, in violation of D.C. Code §28-3904(f).

101.      Defendants committed unlawful trade practices under D.C. Code § 28-3904 by, *inter alia*:

   a.      Materially misrepresenting that settlement services benefited Ms. Travers when the services benefited Defendants, in violation of § 28-3904 (a) & (e);

   b.      Providing loan documents to Ms. Travers for signature and initials with blanks that were left to be filled in, in violation of D.C. Code §28-3904(r)(5).

20

102.    These misrepresentations of material facts or failures to state material facts were made with knowledge that they were false or that their omission would create a false understanding.

103.    Ms. Travers justifiably relied on these misrepresentations and/or failures to state material facts.

104.    Defendants' violations of the CPPA were intentional, willful and wanton and justify the imposition of treble and punitive damages as well as attorneys' fees and costs.

## COUNT IV – VIOLATIONS OF THE CPPA
### (AGAISNT DEFENDANT MILLENNIUM TITLE)

105.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

106.    Defendant Millennium Title committed unlawful trade practices under D.C. Code § 28-3904 by, *inter alia* materially misrepresenting entries contained on the HUD 1 settlement sheet, in violation of § 28-3904(a) and (e).

107.    These misrepresentations of material facts or failures to state material facts were made with knowledge that they were false or that their omission would create a false understanding.

108.    Ms. Travers justifiably relied on these misrepresentations and/or failures to state material facts.

109.    Defendants' violations of the CPPA were intentional, willful and wanton and justify the imposition of treble and punitive damages as well as attorneys' fees and costs.

21

## COUNT V - NEGLIGENCE
### (AGAINST MILLENNIUM TITLE)

110.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

111.    Defendant Millennium Title owed a duty to use reasonable care in preparing documents and conducting the closing regarding Ms. Travers's home.

112.    Defendant Millennium Title failed to disburse monies owed to Ms. Travers, described on the settlement sheet as a "cash out." The cash out amount stated on the Settlement Sheet was $1,212.93. Ms. Travers did not receive the cash out from the transaction.

113.    Defendant's acts were intentional, willful and wanton and justify the imposition of damages as well as attorneys' fees and costs.

## COUNT VI – CONVERSION
### (AGAINST MILLENNIUM TITLE)

114.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

115.    Defendant Millennium Title refused to pay Ms. Travers her monies, known as a "cash out," from the March 2008 mortgage.

116.    Defendant unlawfully exercised ownership, dominion, and control over Ms. Travers monies. In doing so, Defendant denied and repudiated Ms. Travers of her right to her monies.

117.    Defendant's intentional interference with Ms. Travers was willful and wanton and with reckless disregard for Ms. Travers's rights and monies.

22

118.    Defendant wrongfully converted monies from Ms. Travers's March 2008 loan.

119.    Ms. Travers suffered damages as a result of Defendant's actions.


## COUNT VII -UNCONSCIONABILITY
### (AGAINST ALL DEFENDANTS)

120.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

121.    Defendants obtained and finalized mortgages to Ms. Travers's home under procedurally unconscionable circumstances.

122.    Ms. Travers's financial distress and vulnerability were readily apparent to Defendants.  Defendants held the superior bargaining power.

123.    The terms of the transactions were substantively and procedurally unconscionable, unreasonably favorable to Defendants, and varied grossly from the market rates to the detriment of Ms. Travers.   The mortgages offered and the methods of obtaining and finalizing the mortgages are so gross as to shock the conscience.


## COUNT VIII - BREACH OF FIDUCIARY DUTY
### (AGAINST CHASE TITLE AND MILLENNIUM TITLE)

124.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

125.    Defendants Millennium Title and Chase Title purport to have provided services, including settlement services, to Ms. Travers, including by preparing closing

23

documents and by certifying, notarizing and recording the Wells Fargo Deeds of Trusts and the World Savings Deed of Trust.

126.    Defendants had a fiduciary duty to Ms. Travers, including but not limited to the duty to conduct the closing in compliance with District of Columbia Consumer Protection Laws.

127.    Defendants Chase Title and Millennium Title failed to protect the interests of Ms. Travers at the real estate transactions.  Defendants Chase Title and Millennium Title failed to ensure that all requirements for settlement were fully satisfied.

128.    Defendants breached their fiduciary duty to Ms. Travers by, including but not limited to, failing to conduct the closing in compliance with Consumer Protection Laws.

129.    Ms. Travers has been damaged by Defendants' breach of fiduciary duty.


## COUNT IX - VIOLATIONS OF THE TRUTH IN LENDING ACT
### (AGAINST WELLS FARGO, WORLD SAVINGS, AND DEFENDANT ASSIGNEES)

130.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

131.    At all times relevant hereto, Wells Fargo and World Savings, in the ordinary course of their  business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

24

132.    At all times relevant hereto, Wells Fargo and World Savings were creditors within the meaning of the Truth in Lending Act ("TILA"), 15 U.S.C. §1602(f) and Regulation Z §226.2(a)(17).

133.    TILA and Regulation Z mandate that all closed end consumer loans be accompanied by a Truth in Lending disclosure of material terms. TILA, 15 U.S.C. §1638, 1639; 12 C.F.R. §226.18. A general disclosure requirement is that the disclosures are clearly and conspicuously in writing.

134.    Wells Fargo and World Savings' TILA disclosures failed to include material terms.

135.    Wells Fargo and World Savings' TILA disclosures were not in a reasonably understandable form. The disclosures were presented in a way to obscure the relationship of the terms.

136.    World Saving's disclosures violated TILA in that it failed to provide two copies of the Notice of Right to Cancel to Ms. Travers.

137.    Assignees of mortgages are liable for rescission under TILA. 15 U.S.C. §1641(c).

138.    Accordingly, Defendants Wells Fargo and World Savings' violations of TILA entitle Ms. Travers to rescission as to the creditors and any defendant assignees under 15 U.S.C. §1635 and 1641(c), as well as to statutory damages under 15 U.S.C. §1640, costs and attorneys' fees pursuant to 15 U.S.C. §1640.

## COUNT X - VIOLATION OF THE MORTGAGE LENDERS
## AND BROKERS ACT
## (AGAINST EQUITABLE AND SOODAK)

139.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

140.    The Mortgage Lender and Broker Act, D.C. Code §26-1101, *et seq.*, regulates loan disclosures and execution of agreements.

141.    A real estate broker or a real estate salesperson who receives any fee, commission, kickback, rebate, or other payment for directly or indirectly negotiating, placing, or finding a mortgage loan for others is not exempt from the provisions.

142.    Defendants Equitable and Mr. Soodak received fees or other payments for negotiating and placing Ms. Travers in the Wells Fargo mortgages and the World Savings mortgage.

143.    Defendants solicited, brokered and extended complex and unconscionable loans to Ms. Travers in violation of D.C. Code §26-1114 by, *inter alia*:

    a.    Obtained a loan agreement from Ms. Travers in which blanks were left to be filled in after execution, in violation of § 26-1114(a)(1);

    b.    Failed to provide Ms. Travers with required documents prior to the closing of the loan, in violation of § 26-1114(a)(7);

144.    Defendants' violations of the Mortgage Lender and Broker Act were intentional, willful and wanton.

26

## PRAYER FOR RELIEF

WHEREFORE, in light of the foregoing, plaintiff Shirley M. Travers respectfully requests that this Court:

a.    award actual damages in an amount to be determined at trial;

b.    award treble damages;

c.    award punitive damages in an amount to be determined at trial;

d.    award attorneys' fees;

e.    award reasonable costs of this action;

f.    award Plaintiff equitable relief;

g.    declare plaintiff entitled to rescind her Wells Fargo and World Savings

mortgages, pursuant to 15 U.S.C. §1635 and §1641(c);

h.    award such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues.

Respectfully submitted,

Amy R. Mix #483483
Legal Counsel for the Elderly
601 E Street NW
Washington, D.C. 20049
Telephone: (202)434-2171
Facsimile: (202)434-6464
*Attorney for Plaintiff*

## VERIFICATION OF SHIRLEY M. TRAVERS

I, SHIRLEY M. TRAVERS, verify under penalty of perjury that the allegations contained in the foregoing VERIFIED COMPLAINT were read to me and are true and correct to the best of my knowledge, information and belief.

_____
SHIRLEY M. TRAVERS

DISTRICT OF COLUMBIA, ss:

SUBSCRIBED AND SWORN TO before me this _9th_ day of January, 2009.

_____
NOTARY PUBLIC

My Commission Expires:        Barbara J. Johnson
                             Notary Public, District of Columbia
                             My Commission Expires 4/30/2011

