**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **SHIRLEY M. TRAVERS,** ) | |
| **Plaintiff** ) | |
| **v.** ) | **Civil Action No. 09-1061 (JR)** |
| ) | |
| **WELLS FARGO BANK, N.A.,** ) | |
| **WORLD SAVINGS BANK, FSB,** ) | |
| **WACHOVIA MORTGAGE, FSB,** ) | |
| **EQUITABLE MORTGAGE GROUP, INC.,** ) | |
| **DARREN SOODAK,** ) | |
| **CHASE TITLE, INC.,** ) | |
| **MILLENNIUM TITLE & ABSTRACT** ) | |
| **COMPANY, INC.,** ) | |
| ) | |
| **and** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **Federal National Mortgage Association** ) | |
| **3900 Wisconsin Avenue, N.W.,** ) | |
| **Washington, D.C. 20016-2892** ) | |
| **Defendants** ) | |

---

### *FIRST AMENDED COMPLAINT*

### I. PRELIMINARY STATEMENT

1.      In this action, originally brought in the Superior Court for the District of
Columbia on January 12, 2009, Plaintiff, Shirley M. Travers, a minority homeowner sought
redress against abusive mortgage refinancing practices that have jeopardized her home.
Collectively, Defendants targeted Ms. Travers, took advantage of her lack of sophistication in
financial matters, and induced her to enter into unsuitable loans that did not substantially benefit
her in violation of federal and District of Columbia laws.

2.      Defendant Equitable Mortgage Group, Inc. ("Equitable") solicited Ms. Travers
and induced her to refinance her home three times in less than twenty seven months.

Collectively, these refinances, with their attendant fees, costs, prepayment penalties, and negative amortization increased the mortgage debt on Ms. Travers's home.

3.      Ms. Travers, a 76-year-old African-American woman, was repeatedly promised low payments and either a fixed-rate or reverse mortgage on her home in Southeast Washington. After being provided with a mortgage, she was then repeatedly advised that her rate was going to adjust upward, which would necessitate a new mortgage.

4.      Instead of the promised fixed-rate loans or reverse mortgage, Ms. Travers was sold a series of increasingly complex and risky mortgage products, including a refinance from a fixed-rate mortgage to a payment option adjustable rate mortgage. These loans were ill-suited to a person of her financial means and did not provide her a substantial benefit.  The payment option adjustable rate mortgage jeopardized her home ownership by increasing the balance on her mortgage every day.

5.      Although she is on a limited fixed income, Ms. Travers continues to pay her monthly mortgage payments.  She uses her savings, which includes the cash she netted from one of the mortgage refinancings, to pay her bills.

6.      Ms. Travers's District of Columbia claims arise in part under the District of Columbia Consumer Protection Procedures Act ("CPPA")  D.C. Code § 28-3901 *et seq.* which protects consumers against unfair and deceptive trade practices.  Among other things, the CPPA prohibits mortgage lenders from making loans if there is a reasonable probability a consumer cannot repay and from making loans from which the consumer does not receive a substantial benefit.

7.      Ms. Travers's District of Columbia claims also arise in part under the District of Columbia Mortgage Lender and Broker Act ("MLBA"), D.C. Code § 26-1101 *et seq.* which

8.     Ms. Travers also asserts claims against defendants Wells Fargo Bank, NA ("Wells Fargo"), World Savings Bank, FSB ("World Savings"), Federal National Mortgage Association ("Fannie Mae") and any other unknown assignee of the Wells Fargo or World Savings mortgages based on violations of the federal Truth in Lending Act, 15 U.S.C. §1601, *et seq.* ("TILA") and a corollary D.C. statute, D.C. Code § 28-3301 *et seq.*

## JURISDICTION

9.     Pursuant to 28 U.S.C. §1441(a), this matter was removed from D.C. Superior Court on June 8, 2009 by Defendants Wells Fargo and Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB ("Wachovia).  The basis of Jurisdiction alleged was Federal Question. The Nature of Suit involved a General Civil matter involving Truth in Lending, 15 U.S.C. Section 1602 et seq.

10.   The jurisdiction of this court is invoked pursuant to the Truth in Lending Act, 15 U.S.C. § 1640(e), and 28 U.S.C. §§ 1331 and 1337.This court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

11.   Plaintiff Shirley M. Travers resides at 4720 B Street, SE, Washington, D.C. 20019 ("the property").  At all times material to this action, Ms. Travers has been a citizen of the District of Columbia

12.    Defendant Wells Fargo is a federally chartered national bank.  Upon information and belief Wells Fargo is located at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104.  Upon information and belief, Defendant Wells Fargo is a licensed mortgage lender in the District of Columbia that regularly originates and purchases loans secured by homes in the District of Columbia.

13.    Upon information and belief, Defendant World Savings was a federally chartered savings bank.  Upon information and belief, Wachovia Mortgage, FSB acquired World Savings.  Upon information and belief, Defendant World Savings regularly did mortgage lending in the District of Columbia and took security interests in District of Columbia properties.

14.    Upon information and belief, Wachovia Corporation is now part of Wells Fargo & Company.  Upon information and belief, Wachovia is now affiliated with Wells Fargo.

15.    Upon information and belief, Defendant Federal National Mortgage Association ("Fannie Mae") is a government-sponsored enterprise (GSE) and operates in the U.S. secondary mortgage market.  Fannie Mae's principal place of business is located at 3900 Wisconsin Avenue, N.W., Washington, D.C. 20016-2892. Upon information and belief, Fannie Mae purchased and securitized the Plaintiff's 2008 mortgage.

16.    Defendant Equitable Mortgage Group, Inc. ("Equitable") is a Maryland corporation whose place of business is 7305 Baltimore Avenue, Suite 207, College Park, Maryland 20740.  Equitable is licensed as a mortgage broker in the District of Columbia.

17.    Defendant Darren Soodak is president of defendant Equitable.  His business address, on information and belief, is 7305 Baltimore Avenue, Suite 207, College

18.        Defendant Millennium Title & Abstract Company, Inc. ("Millennium Title") is a corporation organized and existing under the laws of Maryland with its principal place of business at 2905 Mitchellville Road, Ste. 209, Bowie, MD 20716.

19.        Defendant Millennium Title regularly conducts closings for properties in the District of Columbia, including creating and executing documents affecting title to real property in the District of Columbia. Millennium Title and prepared and executed documents affecting title to the real property at issue in this action.

20.        Upon information and belief, Defendant Millennium Title does not maintain a registered agent in the District of Columbia, and is not licensed to conduct business in the District of Columbia.

21.        Upon information and belief, Defendant Chase Title Inc. ("Chase Title") is unincorporated and has its principal place of business at 300 Redland Court, Suite 205, Owings Mills, MD 21117.

22.        Defendant Chase Title regularly conducts closings for properties in the District of Columbia, including creating and executing documents affecting title to real property in the District of Columbia. Chase Title prepared and executed documents affecting title to the property at issue in this action.

23.        Upon information and belief, Defendant Chase Title does not maintain a registered agent in the District of Columbia, and is not licensed to conduct business in the District of Columbia.

24.     The identities of the assignees of Ms. Travers's January 2006 Wells Fargo mortgage and Ms. Travers's October 2006 World Savings mortgage are unknown at this time. Upon information and belief, these mortgages were securitized and assigned to currently unknown trusts and purchased by unknown investors.  These entities are collectively referred to as the "Unknown Assignees".

25.     Upon information and belief, the current owner of Ms. Travers's March 2008 mortgage is Fannie Mae.

## FACTS

26.     Shirley M. Travers is a 76-year old African-American woman who has owned her home at 4720 B Street SE Washington since 1996.

27.     Ms. Travers suffered a stroke, has a serious heart condition, and undergoes dialysis three times a week.  Ms. Travers began dialysis in June 2005.

28.     Ms. Travers completed the 10th grade and then went to work to help support her family.  Her various jobs included working in a hospital, at a senior facility and as a bus attendant.  She last worked approximately 15 years ago.

29.     Ms. Travers was widowed in 1977.

30.     Currently, Ms. Travers receives Social Security and a pension totaling less than $1,400 a month.

31.     On April 8, 1996, Ms. Travers obtained title to her 2 bedroom, 1 bath home in Southeast Washington through a Quitclaim deed from her aunt.  There was no mortgage on the home when she obtained it.

32.     Ms. Travers obtained her first mortgage on the property in 1997.  The mortgage was a fixed-rate.

33.     For approximately ten years, Ms. Travers was repeatedly solicited with telephone calls and mailings to refinance the existing mortgages on her home.  The representations and promises made in these solicitations were particularly attractive to Ms. Travers because of her desire to have a mortgage that would be affordable on her limited pension and Social Security retirement income.

34.     Each of Ms. Travers's three most recent refinancings was the result of repeated telephone solicitations from Equitable.  Equitable initiated all the refinances which occurred between January 2006 and March 2008.   Equitable president, Defendant Mr. Soodak and Equitable loan officer Ms. Christina Roberson called Ms. Travers repeatedly over this time period, each time telling her they could help her obtain a lower payment and a fixed-rate mortgage or a reverse mortgage.

35.     Ms. Travers told the Equitable representatives that she underwent dialysis three times a week.  Equitable picked up Ms. Travers from her home and drove her to the closings.


### *January 2006 Refinance:  Wells Fargo Mortgage*

36.     In the winter of 2005-2006, Ms. Travers had a mortgage on her home of approximately $116,000.  She was solicited by Equitable over the telephone for a refinance of her mortgage.  Equitable's president, Mr. Soodak, told Ms. Travers that it was time to look into a new mortgage and that her monthly payment would be less.  In fact, Ms. Travers's

37.    Ms. Travers provided Equitable with documentation of her income, assets and bank accounts.

38.    An unidentified Equitable employee allegedly conducted an interview and finalized a Loan Application.   The Loan Application was dated January 13, 2006, the same day as the closing.

39.    Equitable did not provide Ms. Travers with any paperwork to review or sign prior to the closing.

40.    Ms. Roberson picked up Ms. Travers and drove her to the closing in Maryland.  There, Ms. Travers closed this new loan on January 13, 2006.  The originating lender on the loan was Wells Fargo.

41.    Ms. Travers obtained a fixed-rate mortgage, but not on the terms Equitable promised.   Instead, her monthly payments increased by over $130 per month.

42.    The Wells Fargo loan imposed a prepayment penalty if Ms. Travers paid off the mortgage less than three years after its origination.

43.    The principal amount of the new loan jumped from $116,000.00 to $144,000.00.  Ms. Travers paid $8,357.74 in fees and costs to settle the loan as well an as yet undetermined prepayment penalty to repay her previous loan.

44.    Equitable was paid a yield spread premium of $720.00 by Wells Fargo.  A "yield spread premium" is a premium the lender pays to the broker, which is paid for by the borrower in the form of a higher interest rate.  The "yield spread premium" is typically higher when the broker delivers a loan with a prepayment penalty to the lender.

45.     Ms. Travers's home was appraised by Barry S. Sacks at Appraisers USA. On November 3, 2005, the alleged estimated market value of Ms. Travers's home was $225,000.00.  The client listed on the Appraisal Report was Equitable Mortgage Group.  The appraisal cost $350.00.

46.     The January 13, 2006 Loan Application erroneously represented information about Ms. Travers including that Ms. Travers (1) received a monthly pension of $2,135.00 when in fact her 2009 pension amount is less than $630.00 and the amount was less in 2006; (2) had completed 16 years of school when in fact she completed 10 grades; (3) had a savings account numbered 99999 with a purported balance of $4,250.00 when in fact she had no such account or amount in savings; and (4) had been retired for 2 years when in fact she had not worked for at least ten to fifteen years prior to the loan.

47.     Ms. Travers's actual income in January 2006 was insufficient to repay the loan and pay for household expenses.

48.     At the closing, Ms. Travers was given loan documents to sign and initial that had blanks left to be filled in.

49.     The Truth in Lending Act Disclosure Statement dated January 13, 2006 is not in a reasonably understandable form.  The 6.875 % "guaranteed" interest rate stated on the face of the TILA disclosure conflicts with the 7.2840 % Annual Percentage Rate.

50.     Ms. Travers did not receive required loan documents, including a Good Faith Estimate.

51.     On January 9, 2009, a rescission notice was faxed and express mailed to Wells Fargo Home Mortgage.

### *October 31, 2006 Refinance:  World Saving Bank*

52.      In the fall of 2006—only eight months after her previous refinance—Equitable again solicited Ms. Travers over the telephone for another refinance of her mortgage.  Equitable told Ms. Travers that it was time to get the loan straightened out.  Again, Equitable promised lower payments and a fixed rate.  Equitable did not warn Ms. Travers that she would incur a prepayment penalty for paying off the January 2006  loan so early.

53.      Ms. Travers provided Equitable with documentation of her income, assets and bank accounts.

54.      A Christina "Roberin" allegedly conducted an interview and finalized a Loan Application on behalf of World Savings.  The phone number provided for Christina "Roberin" was 301-864-5600.  The phone number for the Equitable Mortgage Group was also 301-864-5600.  One of the representatives from Equitable that contacted Ms. Travers to solicit the refinancing was Christina Roberson.

55.      Equitable did not provide Ms. Travers with any paperwork to review or sign prior to the closing.

56.      Ms. Roberson picked up Ms. Travers and drove her to the closing in Maryland.  There, Ms. Travers closed this new loan on October 31, 2006.   The originating lender on the loan was World Savings.

57.      Equitable provided Ms. Travers with a payment option Adjustable Rate Mortgage, not the fixed rate mortgage product as promised.   Under the terms of the loan, the interest rate charged could change on the first payment date.

58.      The World Savings loan also imposed a prepayment penalty if Ms. Travers paid off the mortgage less than three years after its origination.

59.        The principal amount of the new loan jumped from $144,000.00 to $184,000.00. Ms. Travers paid $8,154.66 in fees and costs to settle the loan as well an as yet undetermined prepayment penalty to repay her previous loan.

60.        Equitable was paid a yield spread premium of $3,680 by World Savings.

61.        Ms. Travers did not receive a copy of an appraisal which allegedly cost $325.00.

62.        The October 31, 2006 Loan Application erroneously represented information about Ms. Travers including that Ms. Travers (1) received a monthly pension and retirement income of $3,440.00 when in fact her 2009 monthly pension and retirement income amount is less than $1,400.00 and the amount was less in 2006; (2) a net rental income of $583 when in fact Ms. Travers had not had tenants since the late summer of 2006; and (3) had been retired for 3.08 years when in fact she had not worked for at least ten to fifteen years prior to the loan.

63.        Ms. Travers's actual income in October 2006 was insufficient to repay the loan and pay for household expenses.

64.         Upon information and belief, World Savings assigned Ms. Travers's mortgage to Wachovia in March 2008.

65.        At the closing, Ms. Travers was given loan documents to sign and initial that had blanks left to be filled in.

66.        Ms. Travers did not receive required loan documents, including a Good Faith Estimate and two Notices of Right to Cancel.

### *March 2008 Refinance: Wells Fargo*

67.　　　In March of 2008, Ms. Travers was again solicited by Equitable over the telephone for yet another refinance of her mortgage.  Equitable told Ms. Travers about a reverse mortgage option.  Equitable did not warn her about a prepayment penalty for paying off the October 2006 loan early.

68.　　　Ms. Travers provided Equitable with documentation of her income, assets and bank accounts.

69.　　　An unidentified Equitable employee allegedly conducted an interview and finalized a Loan Application.   The Loan Application dated March 10, 2008, the same day as the closing, was not signed by Ms. Travers.

70.　　　Equitable did not provide Ms. Travers with any paperwork to review or sign prior to the closing.

71.　　　Ms. Roberson picked up Ms. Travers and drove her to the closing in Maryland.  There, Ms. Travers closed this new loan on March 10, 2008.  The originating lender on the loan was Wells Fargo.

72.　　　At the closing, neither a reverse mortgage nor a fixed-rate mortgage was presented.  Ms. Travers's new loan was an adjustable rate mortgage—not the reverse mortgage she was promised. Under the terms of the loan, Ms. Travers paid interest only for five (5) years.

73.　　　The Wells Fargo loan also imposed a prepayment penalty if Ms. Travers paid off the mortgage less than three years after its origination.

74.　　　The principal amount of the new loan jumped from $184,000.00 to $206,000.00.  Ms. Travers paid $9,389.25 in fees and costs to settle the loan as well an as yet

75.         Equitable was paid a yield spread premium of $706.58 by Wells Fargo.

76.         The March 10, 2008 Loan Application erroneously represented information about Ms. Travers.  Some of the misrepresentations were the same misrepresentations as included on the January 13, 2006 loan application including that Ms. Travers had completed 16 years of school when in fact she completed 10 grades and that she had been retired for 2 years when in fact she had not worked for at least ten to fifteen years prior to the loan.

77.         The March 10, 2008 Loan Application also erroneously stated that Ms. Travers received a gross monthly income of $2,952.00 when in fact her 2009 monthly pension and retirement income amount is less than $1,400.00 and the amount was less in 2008.

78.         Ms. Travers's actual income in March 2008 was insufficient to repay the loan and pay for household expenses.

79.         Ms. Travers's home was appraised by Barry S. Sacks at Appraisers USA. On December 18, 2007, the alleged estimated market value of her home was $270,000.00. The client listed on the Appraisal Report was Equitable Mortgage Group.  The appraisal cost $350.00.  On the day of the appraisal, Ms. Travers wrote a personal check to Barry Saks for $150.00.

80.         At the closing, Ms. Travers was given loan documents to sign and initial that had blanks left to be filled in.

81.    The Truth in Lending Disclosure Statement dated March 10, 2008 is not in a reasonably understandable form.  The 5.250 % "guaranteed" initial interest stated on the face of the TILA disclosure conflicts with the 5.180 % Annual Percentage Rate.

82.    Ms. Travers did not receive required loan documents, including a Good Faith Estimate.

### *Origination and Assignment of Ms. Travers's Mortgages*

83.    On information and belief, Ms. Travers's mortgages were securitized and assigned to currently unknown trusts and purchased by unknown investors ("Unknown Assignees").

84.    Upon information and belief, the current owner for the March 2008 loan is Fannie Mae.

85.    On information and belief, the complex, unaffordable, and unconscionable mortgages extended to Ms. Travers were based on mortgage products and documentation and underwriting guidelines created by Defendants Wells Fargo, World Savings, Fannie Mae, and the Unknown Assignee secondary market partners, all of whom promoted, underwrote and ultimately paid incentives to employees or brokers for each of the loans at issue.

### COUNT I - VIOLATION OF THE D.C. CONSUMER PROTECTION PROCEDURES ACT (CPPA) (AGAINST WELLS FARGO, WORLD SAVINGS, FANNIE MAE, AND UNKNOWN ASSIGNEES)

86.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

87.　　　　The District of Columbia, in order to protect consumers from unfair and misleading business practices and to provide consumers with proper redress of grievances, enacted the Consumer Protection Procedures Act ("CPPA"), D.C. Code §28-3901, *et seq*.

88.　　　　The CPPA applies to consumer credit loans secured by residential property.

89.　　　　Any consumer who suffers damages as a result of violations of the CPPA may bring an action and recover treble damages, attorneys' fees, punitive damages and other appropriate relief.

90.　　　　Defendants Wells Fargo, World Savings, Fannie Mae and Unknown Assignees made, funded, and/or securitized unconscionable loans to Ms. Travers in violation of D.C. Code 28-3904(r)(1), which prohibits making loans without regard to a consumer's ability to repay the loan.  D.C. Code § 28-3904(r).

91.　　　　Defendants Wells Fargo, World Savings, Fannie Mae and Unknown Assignees had knowledge that the Income and Asset sections of Ms. Travers's Residential Loan Application were inflated.

92.　　　　Defendants Wells Fargo, World Savings, Fannie Mae and Unknown Assignees' practice of originating, funding, and/or securitizing mortgages without consideration of actual income or ability to repay is an unfair and deceptive practice under the CPPA.

93.　　　　Defendants Wells Fargo, World Savings, and Fannie Mae, acting in concert with Unknown Assignees, through their actions in promoting, underwriting, ultimately funding and/or securitizing Ms. Travers's loans, violated the CPPA by:

　　　　　　a.　　Paying yield spread premiums and/or other financial incentives to

   b.    Paying yield spread premiums and/or other financial incentives to
         brokers and lenders to originate payment option ARM's that are
         underwritten so that borrowers like Ms. Travers will be forced to
         refinance or go into default because of the inability to repay;

   c.    Paying yield spread premiums and/or other financial incentives  to
         brokers and lenders to originate payment option ARM's whose negative
         amortization will erode the equity in the homes of borrowers such as
         Ms. Travers.

94.    Defendants Wells Fargo, World Savings, and Fannie Mae acting in concert with Unknown Assignees, through their actions in promoting, underwriting, ultimately funding and/or securitizing Ms. Travers's loan, violated the CPPA by paying financial incentives to originate loans to borrowers such as Ms. Travers with unconscionable prepayment penalties.

95.    Defendants Wells Fargo, World Savings, and Fannie Mae acting in concert with Unknown Assignees, through their actions in promoting, underwriting, ultimately funding and/or securitizing Ms. Travers's loan violated the CPPA by paying financial incentives to originate loans which Ms. Travers could not pay based on her actual income.

96.    Defendants Wells Fargo, World Savings, Fannie Mae and Unknown Assignees' violations of the CPPA were intentional, willful and wanton and justify the imposition of treble and punitive damages as well as attorneys' fees and costs.

## COUNT II - VIOLATIONS OF THE CPPA
### (AGAINST EQUITABLE, SOODAK, WELLS FARGO, WORLD SAVINGS, FANNIE MAE AND UNKNOWN ASSIGNEES)

97.     Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

98.     Defendants solicited, brokered, and extended complex and unconscionable loans to Ms. Travers in violation of D.C. Code 28-3904 by, *inter alia*:

    a.  Refinancing Ms. Travers's mortgage loans without providing her substantial benefits. D.C. Code § 28-3904(r)(2).  Indeed, each of the refinancings worked to Ms. Travers substantial detriment—among other things, causing her to pay some combination of substantial costs and fees, prepayment penalties, and/or negative amortization;

    b.  Extending mortgage loans to Ms. Travers with knowledge that there was no reasonable expectation she would be able to repay the mortgages as structured, in violation of D.C. Code §28-3904(r)(1);

    c.  Knowingly taking advantage of Ms. Travers's inability to protect her own interests by reason of her age, physical infirmities, lack of sophistication, and other factors,  in violation of D.C. Code §28-3904(r)(5);

    d.  Providing loan documents to Ms. Travers for signature and initials with blanks that were left to be filled in, in violation of D.C. Code §28-3904(r).

99.     Defendants committed unlawful trade practices under D.C. Code § 28-3904 by, *inter alia*:

a.   Materially misrepresenting the benefits to Ms. Travers of refinancing her home mortgages and the terms of the mortgages in violation of § 28-3904(e);

b.   Materially misrepresenting that the mortgages would have fixed rates, in violation of § 28-3904 (a) & (e);

c.   Materially misrepresenting that a mortgage would be a reverse mortgage, in violation of § 28-3904 (a) & (e);

d.   Failing to state material facts regarding the escalating adjustable rate payments that were imposed under the terms of the Payment Option ARM and interest only ARM mortgages they sold Ms. Travers, in violation of § 28-3904(f);

e.   Materially misrepresenting to Ms. Travers that the rates on her current mortgages were about to adjust upward when those adjustments were not due to occur for many more months, in violation of § 28-3904(a) & (e);

f.   Failing to inform Ms. Travers that refinancing the mortgages with prepayment penalties prior to the expiration of the penalty period would impose significant costs, in violation of § 28-3904(f);

g.   Promising Ms. Travers that her monthly payments would go down when, in fact, the monthly payments were scheduled to go to higher and unaffordable levels, in violation of § 28-3904(a) & (e);

h.   Failing to tell Ms. Travers that the payment option ARM product they sold her would add to the principal balance on her mortgage, in violation of § 28-3904(f);

i.   Providing loan documents to Ms. Travers for signature and initials with blanks that were left to be filled in, in violation of D.C. Code §28-3904(f).

j.   Falsely stating to Ms. Travers that mortgage services were required, in violation of § 28-3904(k);

k.   Representing that the mortgages were supplied in accordance with a previous representations when they were not, in violation of § 28-3904(u);

l.   Failing to provide her with a copy of the Good Faith Estimate, as required by the Real Estate Settlement Procedures Act.

100.    These misrepresentations of material facts or failures to state material facts were made with knowledge that they were false or that their omission would create a false understanding.

101.    Fannie Mae knew that Defendants Equitable and Wells Fargo solicited brokered and extended complex and unconscionable loans to Ms. Travers in violation of D.C. Code 28-3904.

102.    Fannie Mae knew Defendants Equitable and Wells Fargo committed unlawful trade practices under D.C. Code § 28-3904.

103.    Ms. Travers justifiably relied on these misrepresentations and/or failures to state material facts.

104.    Defendants' violations of the CPPA were intentional, willful and wanton and justify the imposition of treble and punitive damages as well as attorneys' fees and costs.

## COUNT III - VIOLATIONS OF THE CPPA
### (AGAINST CHASE TITLE AND MILLENNIUM TITLE)

105.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

106.    Defendants Millennium Title and Chase Title purport to have provided services, including settlement services, to Ms. Travers, including by preparing closing documents and by certifying, notarizing and recording the Wells Fargo Deeds of Trusts and the World Savings Deed of Trust.

107.    Defendants performed settlement services regarding Ms. Travers's mortgages in violation of D.C. Code 28-3904 by, *inter alia*:

    a.    Materially misrepresenting that the documents prepared and presented by the Defendant Title companies were in compliance with District of Columbia laws and business customs, in violation of § 28-3904(e);

    b.    Providing loan documents to Ms. Travers for signature and initials with blanks that were left to be filled in, in violation of D.C. Code §28-3904(f).

108.    Defendants committed unlawful trade practices under D.C. Code § 28-3904 by, *inter alia*:

    a.    Materially misrepresenting that settlement services benefited Ms. Travers when the services benefited Defendants, in violation of § 28-3904 (a) & (e);

    b.    Providing loan documents to Ms. Travers for signature and initials with blanks that were left to be filled in, in violation of D.C. Code §28-3904(r)(5).

109.    These misrepresentations of material facts or failures to state material facts were made with knowledge that they were false or that their omission would create a false understanding.

110.    Ms. Travers justifiably relied on these misrepresentations and/or failures to state material facts.

111.    Defendants' violations of the CPPA were intentional, willful and wanton and justify the imposition of treble and punitive damages as well as attorneys' fees and costs.


## COUNT IV - VIOLATIONS OF THE CPPA
## (AGAINST DEFENDANT MILLENNIUM TITLE)

112.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

113.    Defendant Millennium Title committed unlawful trade practices under D.C. Code § 28-3904 by, *inter alia* materially misrepresenting entries contained on the HUD-1 settlement sheet, in violation of § 28-3904(a) and (e).

114.    These misrepresentations of material facts or failures to state material facts were made with knowledge that they were false or that their omission would create a false understanding.

115.    Ms. Travers justifiably relied on these misrepresentations and/or failures to state material facts.

116.    Defendants' violations of the CPPA were intentional, willful and wanton and justify the imposition of treble and punitive damages as well as attorneys' fees and costs.

## COUNT V - NEGLIGENCE
## (AGAINST MILLENNIUM TITLE)

117.     Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

118.     Defendant Millennium Title owed a duty to use reasonable care in preparing documents and conducting the closing regarding Ms. Travers's home.

119.     Defendant Millennium Title failed to disburse monies owed to Ms. Travers, described on the settlement sheet as a "cash out."  The cash out amount stated on the Settlement Sheet was $1,212.93.  Ms. Travers did not receive the cash out from the transaction.

120.     Defendant's acts were intentional, willful and wanton and justify the imposition of damages as well as attorneys' fees and costs.

## COUNT VI – CONVERSION
## (AGAINST MILLENNIUM TITLE)

121.     Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

122.     Defendant Millennium Title refused to pay Ms. Travers her monies, known as a "cash out," from the March 2008 mortgage.

123.     Defendant unlawfully exercised ownership, dominion, and control over Ms. Travers monies.  In doing so, Defendant denied and repudiated Ms. Travers of her right to her monies.

124.     Defendant's intentional interference with Ms. Travers was willful and wanton and with reckless disregard for Ms. Travers's rights and monies.

125.     Defendant wrongfully converted monies from Ms. Travers's March 2008 loan.

126.     Ms. Travers suffered damages as a result of Defendant's actions.

### COUNT VII -UNCONSCIONABILITY
### (AGAINST ALL DEFENDANTS)

127.     Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

128.     Defendants brokered, settled, funded and securitized mortgages on Ms. Travers's home under procedurally unconscionable circumstances.

129.     Ms. Travers's financial distress and vulnerability were readily apparent to Defendants.  Defendants held the superior bargaining power.

130.      The terms of the transactions were substantively and procedurally unconscionable, unreasonably favorable to Defendants, and varied grossly from the market rates to the detriment of Ms. Travers.   The mortgages offered and the methods of obtaining and finalizing the mortgages are so gross as to shock the conscience.

### COUNT VIII - BREACH OF FIDUCIARY DUTY
### (AGAINST CHASE TITLE AND MILLENNIUM TITLE)

131.     Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

132.     Defendants Millennium Title and Chase Title purport to have provided services, including settlement services, to Ms. Travers, including by preparing closing

133.    Defendants had a fiduciary duty to Ms. Travers, including but not limited to the duty to conduct the closing in compliance with District of Columbia Consumer Protection Laws.

134.    Defendants Chase Title and Millennium Title failed to protect the interests of Ms. Travers at the real estate transactions.  Defendants Chase Title and Millennium Title failed to ensure that all requirements for settlement were fully satisfied.

135.    Defendants breached their fiduciary duty to Ms. Travers by, including but not limited to, failing to conduct the closing in compliance with Consumer Protection Laws.

136.    Ms. Travers has been damaged by Defendants' breach of fiduciary duty.


### COUNT IX - VIOLATIONS OF THE TRUTH IN LENDING ACT
### (AGAINST WELLS FARGO, WORLD SAVINGS,
### FANNIE MAE AND UNKNOWN ASSIGNEES)

137.    Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

138.    At all times relevant hereto, Wells Fargo and World Savings, in the ordinary course of their  business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.

139.    At all times relevant hereto, Wells Fargo and World Savings were creditors within the meaning of the Truth in Lending Act ("TILA"), 15 U.S.C. §1602(f) and Regulation Z §226.2(a)(17).

140.      TILA and Regulation Z mandate that all closed end consumer loans be accompanied by a Truth in Lending disclosure of material terms.  TILA, 15 U.S.C. §1638, 1639; 12 C.F.R. §226.18.  A general disclosure requirement is that the disclosures are to be made clearly and conspicuously in writing.

141.      Wells Fargo and World Savings' TILA disclosures failed to include material terms.

142.      Wells Fargo and World Savings' TILA disclosures were not in a reasonably understandable form.  The disclosures were presented in a way to obscure the relationship of the terms.

143.      World Saving's disclosures violated TILA in that it failed to provide two copies of the Notice of Right to Cancel to Ms. Travers.

144.      Assignees of mortgages are liable for rescission under TILA. 15 U.S.C. §1641(c).

145.      Accordingly, Defendants Wells Fargo and World Savings' violations of TILA entitle Ms. Travers to rescission as to the creditors and any Unknown assignees, including Fannie Mae, under 15 U.S.C. §1635 and 1641(c), as well as to statutory damages, costs and attorneys' fees pursuant to 15 U.S.C. §1640.

## COUNT X - VIOLATION OF THE MORTGAGE LENDERS
## AND BROKERS ACT
## (AGAINST EQUITABLE AND SOODAK)

146.      Plaintiff repeats the allegations of the preceding paragraphs as if fully set forth herein.

147.      The Mortgage Lender and Broker Act, D.C. Code §26-1101, *et seq.*, regulates loan disclosures and execution of agreements.

148.      A real estate broker or a real estate salesperson who receives any fee, commission, kickback, rebate, or other payment for directly or indirectly negotiating, placing, or finding a mortgage loan for others is not exempt from the provisions.

149.      Defendants Equitable and Mr. Soodak received fees or other payments for negotiating and placing Ms. Travers in the Wells Fargo mortgages and the World Savings mortgage.

150.      Defendants solicited, brokered and extended complex and unconscionable loans to Ms. Travers in violation of D.C. Code §26-1114 by, *inter alia*:

    a.   Obtained a loan agreement from Ms. Travers in which blanks were left to be filled in after execution, in violation of § 26-1114(a)(1);

    b.   Failed to provide Ms. Travers with required documents prior to the closing of the loan, in violation of § 26-1114(a)(7);

151.      Defendants' violations of the Mortgage Lender and Broker Act were intentional, willful and wanton.

## **PRAYER FOR RELIEF**

WHEREFORE, in light of the foregoing, plaintiff Shirley M. Travers respectfully requests that this Court:

a.  award actual damages in an amount to be determined at trial;

b.  award treble damages;

c.  award punitive damages in an amount to be determined at trial;

d.  award attorneys' fees;

e.  award reasonable costs of this action;

f.  award Plaintiff equitable relief;

g.  declare plaintiff entitled to rescind her Wells Fargo and World Savings mortgages, pursuant to 15 U.S.C. §1635 and §1641(c);

h.  award such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues.

Respectfully submitted,

    /s/ Amy R. Mix
Amy R. Mix #483483
Kerry M. Diggin (D.C. Bar # 983085) (Pursuant to LCvR 83.2(g))
Legal Counsel for the Elderly
601 E Street NW
Washington, D.C. 20049
Telephone: (202)434-2171
Facsimile: (202)434-6464
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August, 2009, a true and correct copy of the foregoing First Amended Complaint was served by U.S. mail, first class, postage prepaid to:

Russell J. Pope, Esq.
29 W. Susquehanna Avenue
Suite 110
Towson, Maryland 21204
*Attorneys for Wells Fargo Bank, N.A. and Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB*

James E. McCollum, Esq.
Amit K. Sharma, Esq.
7309 Baltimore Avenue
Suite 117
College Park, Maryland 20741
*Attorneys for Equitable Mortgage Group, Inc.*

Darren Soodak
7305 Baltimore Avenue
Suite 207
College Park, Maryland 20740

Sheldon N. Jacobs
Law Office of Sheldon N. Jacobs
300 Redland Court, Suite 205
Owings Mills, MD 21117
*Attorneys for Chase Title Inc.*

_____/s/ Amy R. Mix_____
Amy R. Mix, #483483